# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| **WILLIAM RUDDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  4:16-CV-0717-VEH** |
| | ) | |
| **NANCY A. BERRYHILL, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant**. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff William Rudder ("Mr. Rudder") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"),[1] who denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Mr. Rudder timely pursued and

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court

exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Rudder was 61 years old at the time of his hearing before the administrative law judge ("ALJ"). (Tr. 49). He has completed the twelfth grade. (Tr. 49). His past work experience includes employment as: (1) a grocery store merchandiser; (2) a merchandiser at Walmart; (3) a sales attendant at Home Depot; and (4) a jewelry salesperson. (Tr. 44-58). Mr. Rudder originally claimed that he became disabled on November 12, 2012, but he later amended his onset date to November 20, 2012. (Tr. 39). His last period of work ended on November 20, 2012. (Tr. 40).

On January 8, 2013, Mr. Rudder protectively filed a Title II application for a period of disability, DIB, and SSI. (Tr. 17, 126-27). On May 15, 2013, the Commissioner initially denied his claims. (Tr. 126-127). Mr. Rudder timely filed a written request for a hearing on May 21, 2013. (Tr. 140). The ALJ conducted a hearing on June 25, 2014, in Birmingham, Alabama. (Tr. 34). On October 29, 2014, the ALJ issued a fully unfavorable decision concluding that Mr. Rudder was not

decisions.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

disabled and denying both his DIB and SSI claims. (Tr. 17-29). Mr. Rudder then

timely petitioned the Appeals Council to review the decision on November 15, 2014.

(Tr. 9-11). On March 9, 2016, the Appeals Council issued a denial of review on his

claim. (Tr. 1-3).

Mr. Rudder filed a Complaint with this court on May 3, 2016, seeking review

of the Commissioner's determination. (Doc. 1). The Commissioner answered on

August 17, 2016. (Doc. 8). Mr. Rudder filed a supporting brief (Doc. 10) on

September 30, 2016, and the Commissioner responded with her own (Doc. 11) on

October 31, 2016. With the parties having fully briefed the matter, the court has

carefully considered the record and remands the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.

The function of this court is to determine whether the decision of the Commissioner

is supported by substantial evidence and whether proper legal standards were applied.

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219,

1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will

determine that the ALJ's opinion is supported by substantial evidence if it finds "such

relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

_____

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 13, 2017.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will

automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.  Mr. Rudder met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 20).

2.  He has not engaged in substantial gainful activity since November 20, 2012, the amended alleged onset date. *Id.*

3.  He has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), asbestosis, fatigue, diabetes, peripheral neuropathy, obesity, and obstructive sleep apnea. *Id*.

4.  Mr. Rudder does not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

5.  He has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c)[5] and § 416.967(c), which allows for temperature controlled environment

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

with no excessive exposure to dust, fumes, or gases; no operation of hazardous machinery; no unprotected heights; no driving; no climbing; and no lower extremity pushing or pulling. (Tr. 25).

6.    Mr. Rudder is capable of performing past relevant work as a jewelry sales person. This work [classified as light][6] does not require the performance of work-related activities precluded by his residual functional capacity. (Tr. 29).

7.    Mr. Rudder has not been under a disability, as defined in the Social Security Act, from November 20, 2012,[7] through the date of this decision. *Id*.

## ANALYSIS

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[7] Mr. Rudder amended his alleged disability onset date from November 12, 2012, to November 20, 2012, during his hearing with the ALJ. Thus, the court presumes the ALJ intended to state November 20, 2012, not November 12, 2012, as reflected in the ALJ's findings.

F.2d 1103, 1106 (5th Cir. 1980)).[8] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the Commissioner." *Walden*, 672 F.2d at 838 (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)). Mr. Rudder asserts that: (1) "the ALJ did not properly assess the Plaintiff's credibility consistent with the Regulations," (Doc. 10 at 4), and (2) "the ALJ failed to properly articulate good cause for according less weight to opinion of Plaintiff's treating physician"–Wendy R. Miller, M.D. ("Dr. Miller"). (Doc. 10 at 10).

In its review, the court finds that this case should be remanded for further development. Under the instant circumstances, substantial evidence does not exist in the record to support the ALJ's conclusion that Mr. Rudder is not disabled and can perform medium work because the ALJ's negative credibility finding is not based on substantial evidence. Additionally, the court agrees with Mr. Rudder that the ALJ committed reversible error in his evaluation of the medical evidence.

## I.  The ALJ Failed To Follow The Eleventh Circuit Pain Standard And His Credibility Finding Was Not Based On Substantial Evidence.

The Eleventh Circuit pain standard "applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective

---

[8] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires "evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). "The [pain] standard also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

A claimant's statements about pain or other symptoms do not alone establish disability. 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). Rather, "there must be medical signs and laboratory findings which show that [claimants] have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* Even if a claimant is able to show medical impairments that could reasonably be expected to produce the alleged symptoms, the Commissioner "must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the Commissioner] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("[A]fter

considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). However, if the ALJ discredits a claimant's testimony regarding the severity of his symptoms, that determination must be supported by substantial evidence. *Id.*; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (explaining that the Commissioner's factual findings must be supported by substantial evidence).

While a credibility determination is the province of the ALJ, he may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p ("[T]he effect the symptoms have on [the claimant's] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").[9] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

This other evidence includes "any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or non-treating source, or

---

[9] Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* Relevant factors that may show the effect of the claimant's symptoms on his or her functional abilities include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the pain; and other treatments or measures taken by the claimant, not including medication. *Id.* Using these other evidence factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony. *Id.*

In applying the Eleventh Circuit pain standard to the present case, the ALJ found Mr. Rudder provided sufficient medical evidence of his underlying medical conditions and, thus, satisfied the first prong of the Eleventh Circuit framework for evaluating pain. (Tr. 25). However, when applying the second alternative of the second prong of the standard,[10] the ALJ found Mr. Rudder's "assertions [were] not

---

[10] The second prong of the Eleventh Circuit pain standard has two disjunctive parts and, as a result, the entire framework for pain evaluation has sometimes been referred to as the three-part pain standard. *See, e.g., Elam v. Railroad Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) ("Our decisions since *Hand* and *Landry* have consistently applied this three-part pain standard.") (footnotes omitted). Further, as the *Elam* court summarized the administrative and federal case history for *Hand*:

> In *Hand* the Appeals Council, on its own motion, reversed the administrative law judge's finding of disability based on pain. The panel's decision adopted the three-part standard set out above and affirmed the Appeals Council's action. 761 F.2d

entirely credible or established by the preponderance of the evidence." (Tr. 27). As explained *infra*, the court finds the ALJ's reasons for discrediting the claimant's subjective limitations, while explicit, are inadequate as a matter of law.

In support of his credibility determination, the ALJ attempted to discredit Mr. Rudder's testimony concerning the alleged debilitating effects of his symptoms based primarily upon a lack of supporting objective medical evidence, the relative effectiveness of Mr. Rudder's Continuous Positive Air Pressure ("CPAP") treatment, and Mr. Rudder's noncompliance with medical advice to stop smoking. (Tr. 27-28). As addressed in detail below, the court finds that the ALJ's proffered reasons for discrediting Mr. Rudder's pain testimony are flawed and, therefore, they do not satisfy the substantial evidence standard.

### A. The ALJ improperly relied mostly upon a lack of objective medical evidence to discredit Mr. Rudder's subjective lower extremity symptoms and limitations.

---

at 1547, n.1. We vacated the panel's opinion and granted a rehearing en banc. *Parker v. Heckler*, 774 F.2d 428 (11th Cir. 1985). The sole issue considered on rehearing was the proper scope of court review in cases in which the Council reverses the ALJ's ruling on its own motion. *Parker v. Bowen*, 788 F.2d 1512 (11th Cir. 1986) (en banc). We determined the proper scope of review and remanded to the panel for further proceedings. *Id.* at 1522. On remand the panel reinstated without change the part of its opinion that had adopted the three-part pain standard. *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986).

*Elam*, 921 F.2d at 1215 n.1.

It is "well established that reversible error exists if complaints of subjective pain are disregarded simply because they are not supported by objective clinical and laboratory medical findings." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). "[A] claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself." *Elam*, 921 F.2d at 1215; *see id.* (recognizing that neither the regulations nor the *Hand* standard "requires objective proof of the pain itself").[11] "[P]ain and other subjective symptoms cannot be objectively measured and . . . the same physical impairment may produce differing levels of pain in different individuals." *Carr v. McMahon*, 481 F. Supp. 2d 1227, 1232 (N.D. Ala. 2007) (citing 20 C.F.R. §404.1545(e)).

The medical evidence in the record establishes that the pain Mr. Rudder has experienced in his lower extremities is attributable to neuropathy that is caused by diabetes. (Tr. 393, 398, 402, 421). In making his credibility determination regarding Mr. Rudder's subjection symptoms tied to his neuropathy, the ALJ relied mostly upon the absence of objective medical evidence confirming the level of severity claimed

---

[11] Although *Elam* involved disability benefits under the Railroad Retirement Act, the Eleventh Circuit has determined that "[p]rovisions of Railroad Retirement Act are so closely analogous to those of Social Security Act that regulations and cases interpreting latter are applicable to former." 921 F.2d at 1215. Given that Eleventh Circuit determination in *Elam*, this court finds that the converse is likewise true–cases interpreting the Railroad Retirement Act are equally applicable to the Social Security Act.

by Mr. Rudder. (*See, e.g.*, Tr. 27 ("Findings from a consultative examination revealed that the claimant had full range of motion in all extremities."); *id.* ("Although mild decreased sensation was observed in the right lower extremity, Mr. Rudder maintained a normal gait and motor strength in all extremities."); *id.* ("[C]laimant's extremities were consistently normal and symmetric with the exception of some redness on the right foot, which required no treatment.")). In doing so, the ALJ has not adequately discredited Mr. Rudder's subjective limitations tied to his neuropathy because, under his faulty analysis, the ALJ has required Mr. Rudder to not only establish with objective medical evidence his disabling condition, but also the claimed severity of that disabling condition. This is contrary to Eleventh Circuit law. *See Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987) ("[T]he ALJ . . . erroneously considered only objective medical evidence, to evaluate claimant's testimony about her pain." (citing *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984))); *cf. Elam*, 921 F.2d at 1215 ("The claimant may show either that objective medical evidence confirms the pain testimony, or that the objectively determined medical condition could reasonably be expected to give rise to the alleged pain." (emphasis omitted) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986))).

The ALJ also inadequately relied upon positive results from Mr. Rudder's use of a CPAP machine (to treat his severe impairment of sleep apnea) to discredit his

subjective lower extremity symptoms and limitations caused by his neuropathy, including his "allegations of an inability to walk more than 20 feet, an inability to sit or stand for more than 15 to 20 minutes, and an inability to lift the weight of a gallon of milk . . . ." (Tr. 28). In particular, the ALJ underscored that the objective "test results from a polysonmogram with CPAP titration revealed that the claimant's sleep apnea greatly improved in the reduced frequency of obstructive events, and he maintained adequate oxygen saturation." (Tr. 28). The ALJ also pointed to evidence that Mr. Rudder "admitted the CPAP was tolerable and beneficial" during an examination on May 2, 2013. (Tr. 28); (*see also* Tr. 405 ("[H]e tolerated the machine well and had benefit but is having nasal congestion.")).

In reaching his conclusion about the credibility of Mr. Rudder's exertional limitations, the ALJ did not point to any self-reporting by Mr. Rudder to his sleep apnea doctor (or other medical provider) which undermined his subjective testimony about his limited ability to walk, sit, stand , or lift. In fact, the record reflects that Mr. Rudder testified at his hearing that the neuropathy in his lower extremities, not obstructive sleep apnea, was the source of his exertional limitations. (*See* Tr. 41 ("Q And when you say your pains in your legs, are you referring to the diagnosis of neuropathy? A Yes, ma'am."); (Tr. 42 ("Q Do you have trouble lifting and carrying objects? A Yes, I do. Q A gallon of milk weighs eight and a half pounds. Would you

be able to lift and carry that, without aggravating the leg pain or - - A No. I don't. I

get my daughter to do that.")). Therefore, because the ALJ has used evidence of Mr.

Rudder's favorable results from the CPAP treatment to discredit his subjective

allegations about his exertional limitations that are attributable to a different severe

impairment–Mr. Rudder's neuropathy–the court finds that the ALJ has not adequately

discredited Mr. Rudder's claimed exertional limitations. Alternatively, to the extent

that such CPAP evidence is relevant to the ALJ's credibility determination about Mr.

Rudder's claimed exertional limitations, such minimal proof cannot, without more,

constitute substantial evidence for discounting them.

**B.     The ALJ also improperly relied mostly upon a lack of objective medical evidence to discredit Mr. Rudder's subjective respiratory symptoms and limitations.**

Similarly, the ALJ has not adequately discredited Mr. Rudder's subjective

respiratory symptoms and limitations tied to his COPD. Instead, the ALJ ineffectively

stated that "the medical evidence does not substantiate the limitations asserted." (Tr.

27). The ALJ then discussed various objective parts of Mr. Rudder's medical record

in an effort to discount Mr. Rudder's subjective complaints about fatigue and other

subjective complications associated with his COPD. (*See, e.g.*, Tr. 27 ("Pulmonary

function test results from April 4, 2013, revealed that the claimant had no greater than

a mild restrictive respiratory defect."); *id.* ("When consultatively examined by Dr.

Lott, the claimant had fair to good air movement throughout both lung fields and only a few distant scattered expiratory wheezes were heard with forced expiration."); *id.* ("Dr. Miller's treatment notes from July 29, 2013, November 13, 2013, and January 23, 2014, provide that claimant's lungs had an even and easy respiratory effort with no use of accessory muscles.")).

In determining whether or not Mr. Rudder's exertional limitations were credible, the ALJ did not point to any statements made or symptoms described by Mr. Rudder to a physician or other medical provider that undermined his subjective testimony about his respiratory symptoms and COPD-related limitations. To the contrary, the record reflects that, at the ALJ hearing, Mr. Rudder testified that his fatigue and shortness of breath affected his ability to function on a daily basis because he has "no energy" and must "lie down a part of everyday because of the fatigue." (Tr. 40-42).

Further, when the ALJ asked Mr. Rudder about the duration of his fatigue-related symptoms, Mr. Rudder testified that he had experienced fatigue for "probably two or three years. It's progressively gotten worse. But it's been a problem for a while. It just keeps getting worse instead of better." (Tr. 49). Lastly, when pressed by the ALJ regarding his shortness of breath, Mr. Rudder stated that sitting, moving around, and "[d]oing anything triggers the shortness of breath. The oxygen helps the

breathing when I'm sitting down. It doesn't help moving." (Tr. 53).

In his evaluation, the ALJ failed to sufficiently point to evidence in the record that Mr. Rudder had described his symptoms in a manner that was undermined by other subjective evidence of his respiratory limitations. Accordingly, based upon the record, the Court concludes that the ALJ erroneously considered only objective medical evidence of Mr. Rudder's respiratory symptoms.

**C.     The ALJ did not adequately explain why Mr. Rudder's inability to quit smoking constituted good cause for discounting his subjective respiratory symptoms and limitations.**

As an additional ground for discrediting Mr. Rudder's subjective symptoms attributable to his COPD, the ALJ pointed out that Mr. Rudder had "admitted a few episodes of smoking cigarettes, even though he had been instructed to refrain from such activity." (Tr. 27). The ALJ further stated that, "[i]n order to get benefits, a claimant must follow treatment prescribed by his physician if this treatment can restore his ability to work," and, "[n]o acceptable reason exists for the claimant's inability to comply with the doctor's instructions to stop smoking." (Tr. 28). As discussed in more detail below, the court finds that the ALJ failed to adequately explain why Mr. Rudder's admission that he had smoked a few times despite treatment recommendations that he quit smoking constituted good cause for

discounting Mr. Rudder's subjective respiratory limitations.

The court is unaware of any Eleventh Circuit published decision that directly addresses whether a claimant's failure to quit smoking provides good cause for discrediting his subjective allegations. The undersigned has previously issued an opinion–*Grier v. Colvin*, 117 F. Supp.3d 1335 (N.D. Ala. 2015)–that deals with this issue in great detail and adopts it as persuasive authority under the circumstances of this case.

As a general matter, it is clear that "the Commissioner may deny benefits for the failure to follow treatment when the claimant, without good reason, fails to follow a prescribed course of treatment that could restore the ability to work." *Grier*, 117 F. Supp.3d at 1346; *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990) ("The Secretary may deny SSI disability benefits if the Secretary determines that 1) the claimant failed to follow a prescribed course of treatment, and 2) her ability to work would be restored if she had followed the treatment."); *McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) ("Secretary may deny SSI disability benefits only when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work.").

In *Grier*, the ALJ had discredited the claimant's subjective complaints because the plaintiff did not follow her physician's instructions to stop smoking. 117 F. Supp.

3d at 1348. The undersigned, following the approach adopted in *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1251 (N.D. Ala. 2004) and *Shramek v. Apfel*, 226 F.3d 809 (7th Cir. 2000), concluded in *Grier* that the ALJ's reliance on plaintiff's failure to quit smoking did not serve as substantial evidence supporting the ALJ's credibility determination because the ALJ did not inquire as to whether the claimant's failure to stop smoking was unjustified. *Grier*, 117 F. Supp. 3d at 1348. Ms. Grier was nicotine dependent and, thus, because of her addiction, her inability to quit smoking did not constitute an unjustified reason for noncompliance without any further inquiry by the ALJ. *Id.*; *see also Seals*, 308 F. Supp. 2d at 1251 ("If the plaintiff was unable to stop smoking because she was addicted to nicotine, her noncompliance would not be unjustified. The burden is on the Commissioner to produce evidence of unjustified noncompliance."); SSR 96-7p ("individual's statements may be less credible . . . , if the medical reports or records show that the individual is not following the treatment as prescribed <u>and there are no good reasons for this failure</u>") (emphasis added). Further, the undersigned found in *Grier* that the ALJ's credibility determination was not supported by substantial evidence because "the ALJ did not cite to any evidence that showed that, if Ms. Grier quit smoking, her condition would improve to the point in which she could be able to work." *Grier*, 117 F. Supp. 3d at 1348.

In the instant case, the ALJ did not discuss whether Mr. Rudder was nicotine

dependent or whether his smoking a few times while otherwise refraining from smoking constitutes a substantial failure to follow recommended treatment. (Tr. 27-28). The ALJ also did not cite to any evidence to support his conclusion that "[n]o acceptable reason exists for the claimant's inability to comply with the doctor's instructions to stop smoking." (Tr. 28).

Further, the ALJ did not cite to any evidence indicating that, if Mr. Rudder had quit smoking, his COPD would have improved to such a degree that he would have been capable of working. To the contrary, a note from Mr. Rudder's treating physician, Dr. Miller, states that she "will not be able to help the disease that is already there but . . . will go ahead and try to help out," with regard to Mr. Rudder's COPD. (Tr. 396). Thus, guided by *Grier*, the court finds that the ALJ's reliance on Mr. Rudder's failure to completely quit smoking is an inadequate reason to discredit his subjective allegations pertaining to his COPD. Alternatively, to the extent that such evidence of noncompliance is relevant to the ALJ's credibility determination, such proof cannot, without more, constitute substantial evidence for discounting Mr. Rudder's credibility. *Cf. Pendley v. Colvin*, No. 15-CV-1612-JEO, 2017 WL 476556, at *6 (N.D. Ala. Feb. 6, 2017) ("While this evidence is not dispositive on the issue of credibility, it certainly is relevant.").

Therefore, based upon the above analysis, while the ALJ has provided explicit

reasons for discrediting Mr. Rudder's subjective exertional and non-exertional limitations caused by his neuropathy and COPD, the court finds that his rationale is inadequate because, for the most part, he only relies upon a lack of objective evidence to carry his burden. Further, the ALJ's reliance upon Mr. Rudder's limited periodic instances of smoking and upon his reported improvement from using a CPAP machine *to treat his sleep apnea* are inadequate reasons for discrediting Mr. Rudder's exertional limitations *caused by his neuropathy*. Alternatively, to the extent that Mr. Rudder's sporadic smoking and positive results from using a CPAP machine are relevant to the ALJ's credibility determination about Mr. Rudder's claimed exertional limitations, that slight level of proof, without more, fails to meet the substantial evidence standard based upon a totality of the record.

## II.   The ALJ Improperly Disregarded The Eleventh Circuit's Rules In Assigning Weight To The Various Medical Opinions.

The court also finds that the ALJ committed reversible error in his treatment of the medical opinions. With respect to an ALJ's consideration of medical opinions, the following framework applies:

> In assessing the medical evidence in this case, the ALJ was required to state with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Further, he was required to accord considerable weight to appellant's treating physician's opinion absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)

(per curiam). The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam). Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

The ALJ, here, disregarded these rules in assigning weight to the various medical opinions. The only opinions that indicated that appellant could meet the medium work requirements of 20 C.F.R. 404.1567(c) (1986) were those of the nonexamining physicians, Drs. Thomas and Register. Their opinions were entitled to little weight, however, and could not serve as substantial evidence.

*Shafarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987) (emphasis added); *see also*

*Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) ("Because Dr. Hibbett did

not examine Ms. Swindle, his opinion is entitled to little weight and taken alone does

not constitute substantial evidence to support an administrative decision." (citing

*Broughton*, 776 F.2d at 962)).

Regarding the Eleventh Circuit's treating physician rule more particularly, the

ALJ "must clearly articulate the reasons for giving less weight to the opinion of a

treating physician, and the failure to do so is reversible error." *MacGregor*, 786 F.2d

at 1053. The testimony of a treating physician must be given substantial or

considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997). Good cause to give less than substantial or

considerable weight to the opinion of a treating physician exists where a treating doctor's opinion is not bolstered by the evidence, where the evidence supported a contrary finding, or where the doctor's opinion is conclusory or inconsistent with their own medical records. *Id.*

Here, the ALJ's decision runs afoul of these rules. More specifically, in evaluating the vocational impact of Mr. Rudder's severe impairments, the ALJ gave "[t]he opinions offered by Dr. Miller . . . minimal weight." (Tr. 28). However, the ALJ's articulated reasons for assigning this low level of weight are not supported by substantial evidence.

As justification, the ALJ articulated that good cause existed because Dr. Miller's "findings are internally inconsistent with opinions offered." (Tr. 28). The ALJ specifically referenced a letter from Dr. Miller dated January 23, 2014, in which she opined that Mr. Rudder "could only walk less than 25 feet[,] [y]et, she found no respiratory, musculoskeletal or neurological deficit that would limit the claimant to only being able to walk less than 25 feet." (Tr. 28). While the ALJ correctly described part of Dr. Miller's letter (*see* Tr. 443 ("[Mr. Rudder] has an inability to walk > 25 feet without stopping to rest.")), he mischaracterized the rest of it. (*See, e.g., id.* ("He has severe COPD and a lung nodule. . . . He also has coronary artery disease and diabetes which has been difficult to control.")). Therefore, the ALJ has not pointed

24

to any internal inconsistency within the January 2014 letter that adequately justified discrediting the opinions of Dr. Miller.

Also, the impairments referenced by Dr. Miller in the 2014 letter are consistent with her treatment notes. For example, the record reflects that Dr. Miller documented the presence of respiratory, cardiovascular, musculoskeletal, and neurological deficits in Mr. Rudder on May 2, 2013 (Tr. 394), and respiratory deficits on May 28, 2013. (Tr. 398). Further, the record reflects consistent complaints and treatment relating to Mr. Rudder's COPD, fatigue, diabetes, and neuropathy. (Tr. 323, 393, 398, 402, 418). Thus, the ALJ's rationale of an internal inconsistency is clearly refuted by the contents of Dr. Miller's treatment notes and the ALJ did not provide good cause to afford Dr. Miller's opinion only minimal weight.

The ALJ also did not give a reason–tied to any contradictory evidence in the record–for only partially crediting the opinions of James Lott, III, M.D. ("Dr. Lott"), who conducted a physical consultative examination and pulmonary function testing of Mr. Rudder on April 4, 2013. (Tr. 21). Based upon his consultative examination of Mr. Rudder, "Dr. Lott . . . opined that the claimant would have some limitation in mobility due to his multiple problems, including his pulmonary disease and obesity." (Tr. 28). In partially discounting Dr. Lott's opinions, the ALJ indicated that "[w]hile [he] agree[d] that the claimant[] experiences some limitation in mobility, such

limitations would not preclude the claimant from performing all work-related activities." (Tr. 28). However, because the ALJ's conclusion to discount Dr. Lott's opinion lacks any corresponding evidentiary support, it cannot meet the substantial evidence standard.

Therefore, the ALJ's discounting of the medical source opinions substantiating Mr. Rudder's inability to physically perform the demands of medium or light work (as a jewelry sales person) does not satisfy the Eleventh Circuit framework and his decision is not supported by the substantial evidence for this alternative reason.[12]

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that substantial evidence does not support the Commissioner's final decision and that the ALJ did not apply proper legal standards. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 25th day of May, 2017.

VIRGINIA EMERSON HOPKINS
United States District Judge

---

[12] Robert Estock, M.D. ("Dr. Estock"), a non-examining state agency consultant, was the only other medical source that the ALJ referenced in terms of assigning weight and that reference was unrelated to Mr. Rudder's physical impairments. (Tr. 28). The ALJ assigned "[s]ignificant weight" to Dr. Estock's opinions about Mr. Rudder's "non-severe mental impairment[.]" (Tr. 28).